J-S63018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON B. OLSEN | |
| Appellant | No. 1861 WDA 2016 |

Appeal from the Judgment of Sentence Dated October 24, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000424-2016

BEFORE: BOWES, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SOLANO, J.:                    **FILED DECEMBER 21, 2017**

Appellant Jason B. Olsen appeals from the judgment of sentence imposed after he was convicted by a jury of recklessly endangering another person ("REAP"), simple assault, and possessing an instrument of crime ("PIC").[1]  We affirm.

The facts of this case are derived mainly from the testimony of James Beerbower, who the trial court described as "the primary witness for the Commonwealth."  Trial Ct. Op. at 2.  Beerbower "was driving in the City of Erie near 10th Street in front of the local YMCA," when "he was cut off by a

---

[1] 18 Pa.C.S. §§ 2705, 2701(a)(3), and 907(a), respectively.  These charges were counts two, three, and six in Appellant's criminal information, respectively.  Appellant was also found not guilty of count one, terroristic threats with intent to terrorize another, 18 Pa.C.S. § 2706, and count seven, driving without a license, 75 Pa.C.S. § 1501(a).  Count four, disorderly conduct – creating a hazardous or physically offensive condition, 18 Pa.C.S. § 5503(a)(4), and count five, harassment – course of conduct with no legitimate purpose, 18 Pa.C.S. § 2709(a)(3), were dismissed.

vehicle which was weaving back and forth between driving and parking lanes." Trial Ct. Op. at 2 (citing N.T., 9/16/16, at 13). "Beerbower described the vehicle as a BMW. Beerbower identified Appellant as the driver of the vehicle. After both vehicles had turned and the two vehicles were next to each other on French Street, Beerbower rolled down his window and told the Appellant 'hey, you almost killed us.'" *Id.* at 2-3 (citing N.T., 9/16/16, at 13, 15, 17, 27).

According to Beerbower, Appellant "then . . . started getting mouthy and saying stuff." N.T., 9/16/16, at 13; *see also id.* at 14 (Appellant "gets mouthy"). Appellant "started yelling." *Id.* at 15. When Beerbower said, "Watch how you drive," Appellant responded, "Well, I don't know what you're talking about[.]" *Id.* Beerbower testified that Appellant then "put up his gun" and "pulled up the gun." *Id.* at 15. Beerbower described the gun as a "blackish/silver" handgun. *Id.* at 16. When asked what direction the gun was pointed, Beerbower responded, "Right at me." *Id.*; *see id.* at 29. As a result, Beerbower said he was both mad and scared. *Id.* at 16-17. Beerbower proceeded to follow the Appellant for several blocks while calling 911 and attempting to read the car's license plate number. Trial Ct. Op. at 3 (citing N.T., 9/16/16, at 17-20). The "number given by Beerbower was JMB-3034[.]" *Id.*

The trial court said Beerbower's testimony was corroborated by the police officers who testified and by tapes of 911 calls that were made by

both Beerbower and Appellant at the time of the incident. Trial Ct. Op. at 3.

According to the trial court:

> Officer Shawn McGill testified that upon approaching Appellant at the location Appellant called 911 from, he found a loaded silver and black handgun in Appellant's waistband . . . , which notably was loaded.
>
> Officer Arthur Roades testified that he came upon a darker blue BMW vehicle with the license plate number JMD-3034. . . . Appellant told Officer Roades that he was not a driver of the vehicle but was sitting in the driver's side while parked waiting for his boss to return when the events transpired.
>
> The 911 calls of Beerbower and Appellant were played for the jury.

*Id.* (citing N.T., 9/16/16, at 44-47, 54-55, 59-60, 69).

During the jury charge, the trial court instructed the jury on the elements of simple assault as follows:

> The first is that the defendant attempted to put Mr. Beerbower in fear of imminent serious bodily injury.
>
> Now, fear of imminent serious bodily injury means fear of an impairment of physical condition that would create a substantial risk of death or could cause serious, permanent disfigurement or protracted loss or impairment of the function of any bodily organ. So that's the first element, whether he attempted to put Mr. Beerbower in fear of imminent serious bodily injury.
>
> Now, the other element is the attempt to put the person in fear. . . . The act is the defendant had a firearm and intended to put the victim in fear of imminent serious bodily injury, and that can be a substantial step, and no other steps would have to be taken before the crime could actually be carried out.
>
> So again, part of the first element is whether the defendant attempted, which means he took a substantial step toward putting Mr. Beerbower in fear of imminent serious bodily injury.

- 3 -

The second element is he did the step by use of physical menace, meaning that he must have done something, some physical act that was menacing or threatening.

Third, that his conduct was such that it was his conscious object or purpose to cause fear of imminent serious bodily injury.

So to review that, the three elements are whether the defendant attempted to put Mr. Beerbower in fear of imminent serious bodily injury. Whether he did so by use of physical menace, and whether his conduct was intentional.

N.T., 9/16/16, at 95-97.

The trial court also instructed the jury on the elements of PIC as follows:

There are these elements: Whether he possessed, and in this case, the Commonwealth is alleging the gun, essentially whether the gun is an instrument of crime.

And he possessed it with the intent to employ it criminally, that is with an attempt to commit a crime with it. . . .

So to summarize, for possessing instrument of crime, it's a question of whether the defendant possessed an item, in this case a gun. Secondly, whether the gun is an instrument of crime. And third, whether he possessed the item with the intent to employ it criminally, that is with the intent to attempt to commit a crime with it.

N.T., 9/16/16, at 98-99.

During a sidebar conference, Appellant requested a self-defense instruction, which the trial court denied. Trial Ct. Op. at 4 n.2 (citing N.T., 9/16/16, at 104-05).

After his conviction on September 16, 2016, Appellant "was sentenced on October 24, 2016 to 6 to 23.5 months at the Erie County Prison [for REAP] with a probation period of 36 months consecutive to his incarceration

[for PIC]." Trial Ct. Op. at 1. He received no further penalty for simple assault. The sentencing guideline forms were included in the certified record. According to the form for REAP, Appellant received an enhancement of his sentence for "HandGun/Pistol/Revolver Used."[2]

On November 3, 2016, Appellant filed Post-Sentence Motions in which he asked for entry of a judgment of acquittal, a new trial, or amendment or modification of his sentence. Trial Ct. Op. at 1. With respect to modification of his sentence, Appellant argued that "the designation of sentencing guidelines under Deadly Weapon Used and/or Deadly Weapon Possessed do not count as the jury did not make a distinct finding that [Appellant] used and/or possessed a deadly weapon as promulgated by *Apprendi v. New Jersey*, 530 U.S. 466 (2000)." Post Sentencing Motion(s), 11/3/16, at 9 ¶ 39. The trial court denied the motions, and Appellant timely appealed.[3]

Appellant now raises the following issues on appeal, as stated in his brief:

> A. Whether the verdict of the jury goes against the sufficiency of the evidence because (a) . . . the Commonwealth cannot meet the "beyond a reasonable doubt" burden of proof for the crime(s) of [REAP] (Count Two), of Simple Assault (Count

---

[2] There is no indication in either the notes of testimony from the sentencing hearing or the written sentencing order that the trial court employed the deadly weapon enhancement. Nevertheless, the trial court does not dispute that it considered the deadly weapon enhancement in fashioning Appellant's sentence. Trial Ct. Op. at 5-6.

[3] The thirtieth day after Appellant's post-sentence motions were denied was Sunday, December 4, 2016. *See* Pa.R.A.P. 903(a). Monday, December 5, 2016, was the first business day thereafter, and Appellant's notice of appeal thus was timely. *See* 1 Pa.C.S. § 1908.

Three), and [PIC] (Count Six) and/or (b) the evidence does not substantiate the findings of "guilty" by the jury on the aforementioned criminal charges.

B.    Whether the trial court erred when it determined that a "self-defense" instruction was unnecessary based on the facts and circumstances for this case.

C.    Whether the trial court erred at time of sentencing when the trial court used "weapons enhancement" guidelines when sentencing Appellant for the [REAP] (Count Two) charge and for the Simple Assault (Count Three) charge.[4]

Appellant's Brief at 3 (suggested answers omitted).[5]

## Sufficiency
(Issue A)

Appellant first "avers and believes that the trial court erred when the jury convicted him for the charges of [REAP] (Count Two), Simple Assault (Count Three) and [PIC] (Count Six)."  Appellant's Brief at 7.

> A claim challenging the sufficiency of the evidence is a question of law.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Sullivan*, 820 A.2d 795, 805 (Pa. Super.) (citation omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003).  As a reviewing court, we may not weigh the evidence or substitute our judgment for that of the

---

[4] We note that Appellant received no penalty for simple assault.  N.T., 10/24/16, at 11.

[5] On July 11, 2017, the Commonwealth filed an application to this Court for an extension of time to file its brief.  Later that same day, this Court granted an extension until August 16, 2017.  The Commonwealth never filed a brief.

fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Haughwout*, 837 A.2d 480, 484 (Pa. Super. 2003).

The trial court's opinion did not address the sufficiency of the evidence for each of the charges individually. Instead, it consolidated its analysis, stating that: the jury, as fact-finder, found the Commonwealth's primary witness, Beerbower, to be credible; Beerbower's testimony was "corroborated by the police officers who testified"; Officer McGill's testimony corroborated Beerbower's "observation of Appellant with a silver and black handgun"; the license plate number given by Beerbower and the plate number of Appellant's BMW were "only one letter off"; Beerbower's and Appellant's 911 calls were played for the jury, meaning that "the jury heard their contemporaneous statements and could square those statements with the trial evidence and their common sense"; "[b]ased on Beerbower's testimony and the corroboration thereof, there [was] sufficient evidence for each element of the crimes beyond a reasonable doubt." Trial Ct. Op. at 2-3. We will address Appellant's specific challenges to the sufficiency of the evidence for each charge individually.

### *Simple Assault*

Appellant was convicted of simple assault pursuant to 18 Pa.C.S. § 2701(a)(3): "Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he attempts by physical menace to put another in fear of imminent serious bodily injury[.]" Appellant argues that he "did not act in any 'menacing' or dangerous manner

with the . . . firearm. Mr. Beerbower testified that he saw the firearm for a couple of seconds (at the longest)." Appellant's Brief at 10-11. Appellant continues that "Mr. Beerbower [did] not testify that during the pursuit that Appellant ever threatened him, pointed the firearm at him, and/or fired the firearm at him[.]" *Id.* at 11.

A defendant need not point or shoot a firearm in order to be found guilty of simple assault by physical menace. In ***Commonwealth v. Little***, 614 A.2d 1146, 1148 (Pa. Super.), ***appeal denied***, 618 A.2d 399 (Pa. 1992), this Court affirmed a conviction for simple assault by physical menace where the appellant simply emerged from her home shouting and carrying a shotgun "'in the cradle,' or in one arm, visible to onlookers," even though she "never pointed the gun" or "verbally threatened to shoot" anyone. *Id.* at 1148 n.2 & 1154. This Court found that the appellant's "actions certainly constituted an implied threat, which was every bit as menacing and frightening" to the victims as a verbal threat, and that "her overall demeanor and actions were designed to, and did in fact, put the [victims] in fear of imminent serious bodily injury." *Id.* at 1148 n.2 & 1154-55.

In the current action, Appellant similarly displayed a firearm and yelled at Beerbower. N.T., 9/16/16, at 13-15. In addition, however, Appellant pointed the firearm "[r]ight at" Beerbower. *Id.* at 16. Here, even more than in ***Little***, Appellant's actions were threatening, menacing, and frightening. They "were designed to, and did in fact, put [Beerbower] in fear

of imminent serious bodily injury." *See Little*, 614 A.2d at 1148 n.2 & 1154-55; *see also* N.T., 9/16/16, at 17 (Beerbower's description of himself as "scared" – *i.e.*, in fear). Accordingly, we find that the evidence clearly supports the jury's verdict that Appellant was guilty of simple assault.

*REAP*

Appellant was convicted of REAP pursuant to 18 Pa.C.S. § 2705: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

> Our law defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." To sustain a conviction under section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created. The mens rea for recklessly endangering another person is "a conscious disregard of a known risk of death or great bodily harm to another person." Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a factfinder may conclude that a defendant proceeded with conscious disregard for the safety of others, and that he had the present ability to inflict great bodily harm or death.

*Commonwealth v. Hopkins*, 747 A.2d 910, 915-16 (Pa. Super. 2000) (citations omitted).

Appellant contends that he "did not act in any 'reckless' or dangerous manner with the . . . firearm." Appellant's Brief at 8. He observes that "Beerbower never said that Appellant verbally threatened to shoot or to kill him, never stated that the Appellant waved the firearm in his direction in a

menacing manner, never stated that the Appellant fired the firearm in his direction or otherwise." ***Id.*** In fact, however, Beerbower specifically testified that Appellant pointed the gun at him and that he was scared as a result. N.T., 9/16/16, at 16-17. We must view the evidence in the light most favorable to the Commonwealth, as verdict-winner, ***see Sullivan***, 820 A.2d at 805, and thus conclude that aiming a loaded firearm at Beerbower, under these facts, was a reckless act that showed a conscious disregard of a known risk of serious bodily injury. ***See Hopkins***, 747 A.2d at 915-16.

*PIC*

Under the heading "Argument Regarding Possession of Instruments of Crime (Count Six)," Appellant contends that he "did not act in any 'reckless' or dangerous manner" with the firearm. Appellant's Brief at 14. Appellant was convicted under 18 Pa.C.S. § 907(a): "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." The statutory language does not require that a defendant use the instrument of crime in a "reckless" or "dangerous" manner. ***See id.*** Thus, whether or not Appellant "act[ed] in any 'reckless' or dangerous manner" while in possession of the firearm is irrelevant, ***see*** Appellant's Brief at 14, and his specific challenge to the sufficiency of the evidence for PIC is meritless.

### Self-Defense Jury Instruction
(Issue B)

Next, Appellant argues that "the trial court erred when it determined

that a 'self-defense' jury instruction was unnecessary based on the facts and circumstances for this case." Appellant's Brief at 16.

"[O]ur standard of review when considering the denial of jury instructions is one of deference — an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted), *aff'd*, 78 A.3d 1044 (Pa. 2013).

"Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." *Commonwealth v. Mayfield*, 585 A.2d 1069, 1070 (Pa. Super. 1991). "[I]t clear that the charge of self-defense must be given upon request if there is evidence presented, from any source, that the defendant acted in self-defense." *Commonwealth v. Gonzales*, 483 A.2d 902, 903 (Pa. Super. 1984). "It is clear that if there is evidence from any source that a defendant acted in self-defense, that the defendant . . . is entitled to a charge that the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Commonwealth v. Rittle*, 428 A.2d 168, 168 (Pa. Super. 1981). "A faulty jury charge will require the grant of a new trial only where the charge permitted a finding of guilt without requiring the Commonwealth to establish the critical elements of the crimes charged beyond a reasonable doubt."

***Commonwealth v. Wayne***, 720 A.2d 456, 465 (Pa. 1998), ***cert. denied***, 528 U.S. 834 (1999).

A claim of self-defense is available only pursuant to Section 505(a) of the Crimes Code: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a).

Appellant maintains that the evidence "proves that [his] actions were justified under the circumstances," because Beerbower, rather than Appellant, provoked the situation. Appellant's Brief at 16. Appellant claims he then believed he was in imminent danger that required him to use force, and he did not violate any duty to retreat. ***Id.*** He argues:

> [T]he jury heard the Appellant's version of events through two (2) mediums: 1) through the statements of Officer Roades as Appellant provided a statement about the aforementioned series of events; and 2) through the Appellant's 911 call to Dispatch as Appellant felt threatened by Mr. Beerbower's actions.
>
> . . .
>
> Mr. Beerbower initiated the conduct by shouting at Appellant as soon as their respective motor vehicles were next to one another at the traffic light[.] . . . [Appellant]'s reaction [was] to either point and/or pull the firearm back for a period of mere seconds . . . [and then] to call 911 for assistance[.] . . . [N]ot only does Appellant not point and/or pull the firearm back for a period of mere seconds[,] the Appellant leaves the area to get away from Mr. Beerbower and his motor vehicle (i.e., even during the next four (4) and a half (1/2) minutes as Mr. Beerbower pursues Appellant and shouts threatening statements to Appellant[)].

***Id.*** at 16-17.

- 12 -

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable William R. Cunningham, we conclude that Appellant's second issue merits no relief. We agree with the trial court's analysis, as follows:

> Appellant provoked the difficulty when he drove recklessly, endangering others including Mr. Beerbower. Appellant escalated the situation when he pulled a gun when the circumstances did not warrant such action. Appellant had no reason to believe he was in imminent danger of [unlawful force] when someone was simply yelling at him from a window in the next lane over. The Appellant could have easily avoided any danger by simply driving away rather than pulling his weapon.
>
> Separately, it must be noted that Appellant's request for a justification instruction was inconsistent with his statement to Officer Roades that he was not driving the vehicle, instead was simply in the vehicle while it was parked waiting for his boss. This statement does not even create any inference of justification since there were no acts of self-defense by Appellant.

Trial Ct. Op. at 4-5; *see also* N.T., 9/16/16, at 13-15, 17, 27, 59-60 (testimony of Beerbower and Officer Roades). In sum, a claim of self-defense was not available to Appellant because he failed to establish that he "**believe[d]** that such forced was **immediately necessary** for the purpose of protecting himself against the use of **unlawful force** by **such other person**," 18 Pa. C.S. § 505(a) (emphasis added). *See* Trial Ct. Op. at 4-5; N.T., 9/16/16, at 13-15, 17, 27, 59-60.

Accordingly, we hold that the trial court did not abuse its discretion nor commit an error of law when it denied Appellant's request for a "self-defense" jury instruction. *See Baker*, 24 A.3d at 1022.

**Sentencing**
(Issue C)

Finally, Appellant insists that "the trial court erred at time of sentencing when the trial court used 'weapons enhancement' guidelines when sentencing Appellant for [REAP] and for the Simple Assault (Count Three) charge." Appellant's Brief at 18.[6] He argues:

Appellant avers and believes that the designation of sentencing guidelines under Deadly Weapon Used and/or Deadly Weapon Possessed do not count as the jury did not make a distinct finding that Appellant either used and/or possessed a deadly weapon as promulgated by **Apprendi v. New Jersey**, 530 U.S. 466 (2000) and/or its progeny as adopted and/or ruled upon the Supreme Court of Pennsylvania.

. . . [T]he jury did not make a specific finding "beyond a reasonable doubt" that Appellant either used and/or possessed a firearm and in fact found Appellant "not guilty" of Terroristic Threats and the trial court dismissed two other counts which included allegations with the aforementioned set of circumstances and with the aforementioned firearm, which was based on the same set of circumstances as the [REAP] and/or Simple Assault charges.

. . . [T]he standard range guidelines for the [REAP] (M2) and Simple Assault (M2) charges were "6 or 7" based on the Deadly Weapon Used enhancement and the standard range guidelines for the [PIC] (M1) charge was "RS to 3." But for the Weapons Enhancement[,] . . . the sentencing guidel[ine]s would have been of "RS to RS" or "RS to 1" or "RS to 2" instead of "6 or 7."

The sentencing guidelines impact how a trial court sentences any defendant, including Appellant, and a set of guidelines that recommends incarceration as "6 or 7" will lead to a period of incarceration even for a set of circumstances such as Appellant's where a few seconds of time (as described above) may lead to incarceration even though no one was afraid or hurt or injured or

---

[6] Appellant's argument overlooks that the court did not impose any sentence for his simple assault conviction.

scared (i.e., Mr. Beerbower) and Appellant had a prior record score of zero "0."

. . .

Based on the above, Appellant avers and believes that this Honorable Court should grant re-sentenc[ing] under sentencing guidelines that do not utilize the Deadly Weapon Used and/or Deadly Weapon Possessed language as the jury, the finder of fact in the instant case, did not make that particular factual finding.

*Id.* at 18-19.

"This Court has held that a challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing." *Commonwealth v. Kneller*, 999 A.2d 608, 613 (Pa. Super. 2010) (*en banc*), *appeal denied*, 20 A.3d 485 (Pa. 2011). Appellant must pass a four-part test when invoking this Court's jurisdiction to challenge the discretionary aspects of a sentence:

(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect [under Pa.R.A.P. 2119(f)]; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265-66 (Pa. Super.) (*en banc*) (citation omitted) (alteration in original), *appeal denied*, 104 A.3d 1 (Pa. 2014). To avoid a "fatal defect," an appellant's brief must include a separate concise statement demonstrating that there is a substantial question regarding the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002) (citing Pa.R.A.P. 2119(f)). This Court has found that the application

of the deadly weapon enhancement ("DWE") presents a substantial question for review. *See Buterbaugh*, 91 A.3d at 1266 (holding that appellant presented a substantial question where he asserted that his vehicle was not a deadly weapon pursuant to the DWE)*.*

Appellant filed a timely notice of appeal and preserved his objection during the sentencing proceeding. His brief includes a concise statement pursuant to Section 2119(f) and thus does not contain a fatal defect. Appellant's Brief at 12. Since he challenges the application of the DWE, Appellant, like the defendant in *Buterbaugh*, has presented a substantial question. We therefore have jurisdiction to hear his challenge.

"When considering the merits of a discretionary aspects of sentencing claim, we analyze the sentencing court's decision under an abuse of discretion standard. In conducting this review, we are guided by the statutory requirements of 42 Pa.C.S. § 9781(c) and (d)." *Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015) (citation omitted). Those statutes provide:

> **(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> > (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> >
> > (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.**—In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

When a sentencing court "fails to begin its calculation of sentence from the correct starting point" in the sentencing guidelines, "this Court will remand for reconsideration of sentence." *Commonwealth v. Solomon*, 151 A.3d 672, 676 (Pa. Super. 2016) (citation omitted), *appeal denied*, 168 A.3d 1265 (Pa. 2017).

The Pennsylvania Sentencing Guidelines include two circumstances in which the DWE applies: "[w]hen the court determines that the offender **possessed** a deadly weapon during the commission of the current conviction offense," 204 Pa. Code § 303.10(a)(1) (emphasis added); or "[w]hen the court determines that the offender **used** a deadly weapon during the commission of the current conviction offense," *id.* § 303.10(a)(2) (emphasis added). Here, according to the sentencing guidelines form included in the certified record, Appellant's sentence for REAP included an

- 17 -

enhancement for "HandGun/Pistol/Revolver **Used**" (emphasis added). Accordingly, Section 303.10(a)(2) applies. A "deadly weapon" includes any loaded or unloaded firearm. 204 Pa. Code § 303.10(a)(2)(i). "[F]or the sake of applying the DWE for use under § 303.10(a)(2), the person's actual use is determinative, and this use is informed by his intentions." **Commonwealth v. Smith**, 151 A.3d 1100, 1107 (Pa. Super. 2016), **appeal granted**, 169 A.3d 1067 (Pa. 2017).[7]

Appellant argues that "no one was afraid or hurt or injured or scared" by Appellant's use of the firearm, and, consequently, the DWE should not have "impacted the sentence imposed the by trial court." Appellant's Brief at 19. The trial court addressed this argument as follows:

> Appellant's argument [that] the jury made no finding on a deadly weapon being used is contrary to the actual record. Appellant was found guilty of [REAP], simple assault, and [PIC] in this case. The jury found Appellant possessed an instrument with the intent to use i[t] criminally, to-wit a gun. The jury also found Appellant placed the victim in danger of death or serious bodily injury for purposes of reckless endangerment and intentionally attempted to put the victim in fear of imminent serious bodily injury by physical menace when he committed a simple assault. Appellant's convictions for these three charges each involved a finding beyond a reasonable doubt that Appellant brandished a deadly weapon.

Trial Ct. Op. at 6.

We agree with the trial court's analysis. Appellant used a loaded firearm to threaten Beerbower, which fulfills the requirements for imposing a

_____

[7] Our Supreme Court has allowed an appeal in **Smith** to resolve whether a deadly weapon enhancement can apply to a conviction involving a motor vehicle accident and whether the defendant had to intend to use the automobile as a deadly weapon. **See generally** 169 A.3d at 1067.

DWE. Therefore, we discern no abuse of discretion in the trial court's use of the DWE under 204 Pa. Code § 303.10(a)(2)(i) when imposing sentence for Appellant's REAP conviction.

Finally, the fact that the jury found that Appellant used a deadly weapon answers Appellant's attempt to package his sentencing argument as a challenge under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). *See* Appellant's Brief at 5, 18. Those decisions require all elements of a crime to be proven before a jury. *See Commonwealth v. Wolfe*, 140 A.3d 651, 670 n.9 (Pa. 2016); *Commonwealth v. Newman*, 99 A.3d 86, 91, 99 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2015); *Commonwealth v. Ciccone*, 152 A.3d 1004, 1006, 1008 (Pa. Super. 2016), *appeal denied*, 169 A.3d 564 (Pa. 2017). Neither case applies to Pennsylvania sentencing enhancements. *See Commonwealth v. Ali*, 112 A.3d 1210, 1225-26 (Pa. Super. 2015), *vacated & remanded on other grounds*, 149 A.3d 29 (Pa. 2016); *see also Buterbaugh*, 91 A.3d at 1270 n.10. But if they did, the fact that the jury found that Appellant used a firearm would dispose of any *Alleyne*/*Apprendi* issue.

In conclusion, for all three claims raised on appeal, we find no abuse of discretion or error of law by the trial court. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/21/2017